**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                            :
NANCY ANDERSON,                :
                                            :
       Plaintiff,                    :
                                            :            Civil Action No. 06-5677 (JAG)
       v.                              :
                                            :            **OPINION**
DSM N.V., a corporation of the Netherlands,:
DSM PHARMACEUTICALS, INC., and :
DSM PHARMACEUTICAL PRODUCTS,   :
                                            :
       Defendants.                :
_____:

**GREENAWAY, JR., U.S.D.J.**

      This matter comes before this Court on the motion by Defendants, DSM Pharmaceuticals Inc., ("DPI"), and DSM Pharmaceutical Products, Inc., (collectively "Defendants")[1], for summary judgment, pursuant to FED. R. CIV. P. 56(c), against Plaintiff, Nancy Anderson ("Anderson" or "Plaintiff"). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

**I. FACTUAL BACKGROUND**

      The following facts are undisputed unless otherwise noted. In May 2002, Anderson began her employment with DPI in Greenville, North Carolina as Vice President of Human

---

[1] Plaintiff has not effectuated service upon named defendant, DSM N.V. (See Defendants' Notice of Removal, Filed November 27, 2006 (Doc. 1), ¶ 4.)

1

Resources.  (Plaintiff's "Statement of Disputed Material Facts" ("Pl. 56.1 Stmt."), ¶ 1.) Plaintiff's terms of employment were memorialized in an offer letter dated May 14, 2002.  (Id., ¶ 2; Defendants' Statement of Material Facts ("Def. 56.1 Stmt."), ¶5.) The letter also confirmed Anderson's employment status as 'at-will'.  (See Certification of Jed Marcus ("Marcus Cert."), Ex. 7.)  In March 2003, Plaintiff began reporting to Leendert Staal, DPI's newly appointed Chief Executive Officer.  (Pl. 56.1 Stmt., ¶ 3; Def. 56.1. Stmt., ¶¶ 6-7.)

In late 2004, Mr. Staal and another company executive approached Anderson about a possible transfer to become the Director of the USA shared services human resources project. (Def. 56.1 Stmt., ¶ 12.)  Plaintiff was formally offered the position by letter ("Transfer of Position letter"), dated November 29, 2004.  (Pl. 56.1 Stmt.,¶ 6; Def. 56.1 Stmt., ¶ 13.)  The Transfer of Position letter stated that Anderson's transfer appointment was to begin January 1, 2005. (Marcus Cert., Ex. 8.)  Plaintiff's employment status remained at-will under the terms of the transfer appointment.  (Id.)  According to the Transfer of Position letter, Anderson's project duties were expected to be completed by June 30, 2006.  (Id.)  If the project was accepted and approved by the relevant stakeholders, Plaintiff was to be appointed "Director DSM Shared Services USA."  (Id.)  Plaintiff's future appointment was contingent on approval by the Executive Development committee.  (Id.)  The Transfer of Position letter stated that in the event Anderson's appointment was not approved, she would be terminated and eligible for nine (9) months severance pay.  (Id.)

On October 11, 2005, Anderson and Mr. Staal met to discuss employment positions and hierarchical reorganization.  (Pl. 56.1 Stmt., ¶ 15; Def. 56.1 Stmt. ¶25).  It was at this meeting that Mr. Staal informed Plaintiff that she would be reporting to a new manager, Cor Vikser.  (Id.)

2

Defendants contend that Anderson became "really upset" by the news of the reporting structure change. (Def. 56.1 Stmt., ¶ 26.) Plaintiff asserts that the news surprised her, because she thought "that the natural progression for her would be to manage" the division. (Pl. 56.1 Stmt., ¶ 16.) Mr. Staal informed Anderson that the reporting decision was non-negotiable. (Pl. 56.1 Stmt., ¶ 17; Def. 56.1 Stmt., ¶ 27). Thereafter, Anderson requested to speak with senior supervisors about her career progression. (Pl. 56.1 Stmt., ¶ 18; Def. 56.1 Stmt., ¶ 27.) Plaintiff's request angered Mr. Staal. (Pl. 56.1 Stmt., ¶ 19; Def. 56.1 Stmt., ¶ 28.)

Defendants contend that it was Plaintiff's behavior at the October 11, 2005 meeting, which led to the decision to terminate Plaintiff. (Def. 56.1 Stmt., ¶ 29.) Mr. Staal's secretary scheduled a follow-up meeting between Plaintiff and Mr. Staal for October 12, 2005. (Id., ¶ 30.) Plaintiff asserts that she was not feeling well and decided to reschedule the meeting. (Pl. 56.1 Stmt., ¶ 24.)

Shortly thereafter, Plaintiff, who had been experiencing chest pains and sweats, flew to South Carolina and visited her doctor. (Id., ¶¶ 26-27.) Anderson was admitted to the emergency room and underwent inpatient treatment for two days. (Id., ¶ 28.) Plaintiff's husband informed her secretary that she had been admitted to the hospital. (Id., ¶ 29.) Mr. Staal contacted the Anderson household on October 17, 2005 to inquire about Plaintiff's condition. (Id., ¶ 31.) Mr. Staal later spoke with Anderson on October 27, 2005, and on another occasion to inquire about Plaintiff's return to work. (Id., ¶¶ 34, 35.) On approximately November 11, 2005, Anderson notified DPI, in writing, of her intention to take leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. (Id., ¶ 41.)

Around December 8, 2005, Anderson received a telephone call from a company executive

notifying her of her termination.  (Id., ¶ 42.)  On December 12, 2005, Plaintiff received a letter from Mr. Staal confirming her termination.  (Id., ¶ 43.)  The termination letter states the reason for termination was Anderson's "refusal to accept the new reporting line, [her] clearly deep-seated unwillingness to support the future arrangement, and the fact that our realignment decision was nonnegotiable."  (Marcus Cert., Ex. 11.)  After her receipt of the termination letter, Anderson's counselor informed DPI, via letter, that plaintiff was still unable to return to work.  (Pl. 56.1 Stmt., ¶ 45; see also Marcus Cert., Ex. 5 at 230.)

Since December 2005 and, at least, until the filing of defendants' summary judgment motion, Anderson has been under the care of Edward Connor, a Licensed Professional Counselor.[2]  (Id., ¶ 46.)  In January 2006, Dr. Connor diagnosed Anderson with Major Depressive Disorder and Panic Disorder.  (Id., ¶¶ 47, 48.)  Plaintiff contends that until October 2006, she was functionally disabled and unable to return to work or find employment for which her experience and education qualified her to perform.  (Id., ¶ 50.)

Plaintiff commenced the instant action on October 24, 2006, by filing a Complaint in the Superior Court of New Jersey.  In the Complaint, Plaintiff alleges causes of action for breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., (Count III); violation of the FMLA (Count IV); violation of the New Jersey Law against Discrimination ("NJLAD") (Count V); and intentional infliction of emotional distress (Count VI).  Defendants

---

[2]Dr. Connor holds a master's and a doctoral degree in counseling, and has been licensed to counsel in South Carolina since 2001.  (Marcus Cert., Ex. 5 at 8-9, 11.)

then filed a notice of removal in this action, pursuant to 28 U.S.C. § 1441[3], and moved for summary judgment on all counts, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

Defendants' motion for summary judgment is granted as to Counts I, II, III, V, and VI. Defendants' motion for summary judgment is denied as to Count IV.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c), when the moving party demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23; Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004). This Court views "the facts in the light most favorable to the nonmoving party and draw[s] all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (internal citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003)

---

[3]This Court has jurisdiction over the instant action, pursuant to 28 U.S.C. § 1331, because the case involves a federal question. This Court also has supplemental jurisdiction over Plaintiff's New Jersey state law claims, pursuant to 28 U.S.C. § 1367.

(quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The non-movant cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

### III. DISCUSSION

**A.   Breach of Contract and of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff claims that Defendants breached its employment contract with her "by unilaterally terminating her agreement without good cause." (Compl. ¶ 20.) In support of her

argument that she enjoyed a contractual employment relationship with DPI, Anderson refers this Court to a Transfer of Position letter, dated November, 29, 2004, which confirmed her appointment as Director of DSM Shared Services Project USA.[4] (Marcus Cert., Ex. 8)

"Under New Jersey law, employment is presumed to be 'at will' unless an employment contract states otherwise." Varrallo v. Hammond, Inc., 94 F.3d 842, 845 (3d Cir. 2006) (citing Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 643 A.2d 546, 552-53 (1994)). Under an at-will scheme, an employer may terminate employment for good reason, bad reason, or no reason at all. See Witkowski, 136 N.J. at 397 (citing English v. Coll. of Med. & Dentistry of N.J., 73 N.J. 20, 23 (1977). The at-will presumption may only be overcome where such intention is "specifically stated in explicit, contractual terms." Bernard v. IMI Sys., Inc., 131 N.J. 91, 106 (1993).

This Court need not make a determination as to whether the Transfer of Position letter constitutes a contract for employment between Plaintiff and Defendants. A plain reading of the Transfer of Position letter reveals that Anderson was, at all times, an at-will employee of DPI. Thus, Defendants were free to fire Plaintiff, at any time, without cause, and for any reason or for no reason. The Transfer of Position letter does not mention a specific duration of employment, it only notes the expected end date of Plaintiff's project. More importantly, the Transfer of

---

[4]The Transfer of Position letter further indicated that Plaintiff's new position was to begin on January 1, 2005. It confirmed the logistics of Anderson's relocation from Greenville, North Carolina, to Parsippany, New Jersey. The Transfer of Position letter also detailed the reporting structure of the position and the expected end date of the project, June 30, 2006. It concludes by noting that upon completion of the project, "it is [DSM's] intention that [Plaintiff] will be appointed Director of DSM Shared Services USA ... [but] in the event that the ED Committee does not approve [Plaintiff's] appointment ... your employment will be terminated and you will be eligible for a severance payment of 9 months base salary." (Marcus Cert., Ex. 8.)

Position letter explicitly states that Anderson's "employment will continue under the same (at-will) conditions. There is no specific revocation of Plaintiff's at-will status. Moreover, the Transfer of Position letter unambiguously states that Anderson's employment was to remain at-will.

Defendants' motion for summary judgment on Plaintiff's breach of contract claim must be granted, as a matter of law. There are no genuine issues as to any material fact that would preclude such a result.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dependent on the existence of a valid employment contract. See Varrallo, 94 F.3d at 848 (citing McQuitty v. General Dynamics Corp., 204 N.J. Super. 514, 520 (App. Div. 1985) (holding that no such covenant exists in "at will" employment relationships)). Thus, Defendants' motion for summary judgment on that claim is, likewise, granted, as a matter of law.[5] No genuine issues as to any material fact preclude this determination.

### B. Plaintiff's ADA/NJLAD Claims

Plaintiff brings disability discrimination claims against Defendants under the Americans

---

[5]In her brief in opposition to Defendants' motion for summary judgment, Anderson raises, for the first time, a new breach of contract claim, alleging that Defendants froze and deleted her stock appreciation rights (SARS) in bad faith and in violation of the parties' contractual agreement. (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp. Br."), p. 19-24.) Since Anderson failed to plead this particular claim in her Complaint, this Court will not consider it. See Bey v. Daimler Chrysler Servs. of N. Am., No. 04-6186, 2006 WL 361385, at *11 (D.N.J. Feb. 15, 2006) ("claims [that] were not alleged in the complaint [ ] cannot be raised for the first time in opposition to a motion for summary judgment); see also, e.g., Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with FED. R. CIV. P. 15(a)"); Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment").

with Disabilities Act and the New Jersey Law Against Discrimination.  As an initial matter, the ADA requires claimants in a state with a state fair employment agency to file a charge of discrimination with such agency within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5.  New Jersey has such an agency–the New Jersey Division on Civil Rights.  Thus, in order for Anderson to bring an ADA claim in this Court, she must first have filed a charge with the New Jersey Division on Civil Rights.

Plaintiff, however, has not exhausted the administrative remedies available to her, as required by the ADA.  Plaintiff does not dispute that she did not file a charge of discrimination with the New Jersey Division on Civil Rights, or with any other agency.  (Marcus Cert., Ex. 2 at 280.)  Rather, Plaintiff contends that because her initial complaint was filed in state court, "the exhaustion of administrative remedies is not a prerequisite for an action under Title II of the Americans with Disabilities Act."  (Pl. Opp. Br., p. 24 (citing Ferraro v. City of Long Branch 714 A.2d 945, 956 (App. Div. 1998); and 42 U.S.C. § 12101 to § 12213).)

The ADA's requirements for Title II plaintiffs, and, thus the holding of Ferraro, are however, irrelevant to the instant action.  Title II of the ADA concerns the activities of *public entities*.  See 42 U.S.C. § 12132.  Defendants are private corporations.  Thus, Title II's more liberal filing procedures are inapplicable here.  Plaintiff failed to exhaust her administrative remedies prior to filing her ADA claim.  Therefore, Defendants are entitled to summary judgment on Plaintiff's ADA claim.

In this Circuit, disability discrimination claims brought under the NJLAD are evaluated using the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973); Olson v. General Elec. Astrospace, 101 F.3d 947, 956 (3d Cir. 1996).[6] In order to satisfy her prima facie burden, a plaintiff must be able to establish that she (1) has a "disability" (2) is a "qualified individual" and (3) has suffered an adverse employment action because of that disability. Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998).[7]

This matter turns on the second prong, namely, whether Anderson was a "qualified individual." In the Third Circuit,

> [a] two-part test is used to determine whether someone is a qualified individual with a disability. First, a court must consider whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. Second, the court must consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation ... The burden is on the employee to prove that [s]he is an otherwise qualified individual.

Gaul v. Lucent Tech., 134 F.3d 576, 581 (3d Cir. 1998) (quoting 29 C.F.R. pt. 1630, App. at 353-54) (internal citations omitted).

Plaintiff fails to prove that she is a "qualified individual." In her submissions, Anderson attempts to establish her status as a qualified individual by referring this Court to positive reviews she received during her tenure with DPI. (See Pl. Opp. Br., p. 25-26.) Defendants do not suggest that Anderson lacked the skill or competence required for her position. Rather, Defendants contend that Plaintiff was, and is, unable to perform the essential functions of her

---

[6] Claims brought pursuant to the ADA are analyzed under the same framework. Id.

[7] If a party establishes its prima facie case, the McDonnell Douglas test requires this Court to consider an employer's proposed legitimate, non-discriminatory reason for taking the employment action, which Plaintiff claims is adverse. Plaintiff would then have the burden of showing, on summary judgment, that there is a genuine issue as to a material fact that the proferred legitimate, non-discriminatory reason for the adverse employment action is pretextual. Here, this analysis is unnecessary, based on Plaintiff's inability to establish her prima facie case.

10

position. This Court agrees.

Plaintiff puts forth no facts showing that she was, or is, able to perform essential job functions. In fact, Plaintiff's own counselor, Dr. Edward Connor, testified that until October 2006, "not only could [Plaintiff] not work at her job ... she couldn't be with people. She couldn't run her life well."[8] (Marcus Cert., Ex. 5 at 61.)

The NJLAD does not prohibit the termination of any person who "is unable to perform adequately the duties of employment." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446 (2005) (quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 13 (2002)). Anderson was, and is, unable to resume the same job responsibilities she held while employed by DPI. Thus, Defendants are entitled to summary judgment on Plaintiff's discrimination claim, pursuant to the NJLAD.

**C.     Plaintiff's FMLA Claim**

Plaintiff further claims that she was terminated in retaliation for exercising her right to take unpaid leave under the Family and Medical Leave Act. Under the FMLA, employees are entitled to a maximum of twelve weeks of unpaid leave per year to address "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not retaliate against an employee who requests or uses FMLA leave. Id. at § 2615(a)(2); 29 C.F.R. § 825.220(c). Plaintiff claims that she was fired in retaliation for her decision to take FMLA leave, and for informing DPI that she was unaware of when she would be able to return to work.

This Court analyzes Anderson's retaliation claim also using the McDonnell Douglas

---

[8] At his deposition on February 19, 2008, Dr. Connor stated that Anderson was still unable to return to her position at DPI. In fact, Dr. Connor remained unsure of whether she would ever be capable of resuming the same job functions with the company. (Marcus Cert. Ex., 5 at 63).

burden-shifting framework.  To establish her prima facie case, and prove retaliation in violation of the FMLA, Anderson bears the burden of showing that "1)[s]he took FMLA leave; 2) [s]he suffered an adverse employment decision; and 3) that the adverse decision was causally related to [her] leave."  Conoshenti v. Public Svc. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).  If Anderson succeeds in making out her prima facie case, then "the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered [the FMLA leave]." Id.

There is no dispute that Plaintiff took FMLA leave and that she suffered an adverse employment decision–that is, that she was terminated.  What is less clear is whether Anderson's termination was causally related to her exercising her right to FMLA leave.  In determining causality, courts consider two primary factors: timing and a pattern of antagonism.  See Hare v. Potter, 220 F. App'x 120, 128 (3d Cir. 2007); Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288 (3d Cir. 2001).

The facts surrounding Anderson's termination are as follows: on or about November 11, 2005, Anderson informed Defendants of her intention to take disability leave under the FMLA. (Pl. Rule 56.1 Stmt., ¶ 41.)  During Plaintiff's absence, Defendants twice inquired of Plaintiff as to her return date.  (Id., ¶¶ 36, 38.)  On or about December 8, 2005, Defendants informed Anderson via telephone of her termination.  (Id., ¶ 42.)  The termination decision was later memorialized in a letter to Plaintiff, which she received on December 12, 2005.  (Id., ¶ 43.)  It is undisputed that prior to October 11, 2005, Anderson received positive work reviews (Id., ¶ 11.) Nevertheless, Defendants contend that the decision to fire Plaintiff was unrelated to Plaintiff's decision to take FMLA leave.  Defendants instead assert that the decision came as result of one

12

incident–the October 11, 2005 meeting.

This Court finds, however, that Plaintiff has raised a genuine issue of material fact as to whether she was terminated in retaliation for taking FMLA leave. Plaintiff's termination came less than one month after she informed DPI of her intention to take FMLA leave. Defendants' inquiry into Plaintiff's return date, and concern for Plaintiff's project, belies the assertion that Defendants had planned to terminate Plaintiff's employment prior to her taking FMLA leave. Finally, there is no evidence that Anderson ever received negative reviews or disciplinary action during her tenure with DPI, prior to taking FMLA leave. The record, as a whole, suggests that Defendants' proffered reason for firing Anderson–that she expressed reticence to cooperate in a new hierarchical structure–may be pretextual. Defendants' motion for summary judgment as to Anderson's FMLA claim is denied, based on the existence of genuine issues as to material facts.[9]

**D.   Intentional Infliction of Emotional Distress**

Anderson alleges that she suffered severe emotional distress as a result of being pressured "to return to work while she was under a doctor's care for anxiety." (Compl. ¶ 36.) In support of her argument, Anderson contends that Defendants began a "pattern of harassment" that "continued for many months beginning with phone calls from Staal demanding to know when

---

[9]Defendants argue that Plaintiff's FMLA claim must also fail because Plaintiff was unable to return to work following the expiration of her FMLA leave period. An employer is free to terminate an employee who is unable to return to work at the expiration of the leave period, and may do so during the leave period, if it becomes apparent that the employee will not be able to resume her duties. See Katekovich v. Team Rent a Car of Pittsburgh, Inc., 36 F. App'x 688, 690 (3d Cir. 2002). In this case, however, Defendants fired Plaintiff without any indication that she would not be able to return to work, a possible violation of FMLA's prohibition against firing employees who take medical leave. That Defendants were later apprised of Plaintiff's inability to return to work cannot remedy a pre-existing possible FMLA violation.

Nancy would be able to return to work despite Nancy advising she was in no condition ... to discuss work." (Pl. Opp. Br., p. 34-35.)  Plaintiff also asserts that her termination, and the subsequent cessation of disability and other benefits payments, constitutes further intentional infliction of emotional distress.  (Id., p. 35.)

To establish an intentional infliction of emotional distress claim under New Jersey law, a plaintiff must show (1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe.  Buckley v. Trenton Sav. Fund Soc., 544 A.2d 857, 863 (N.J. 1988).  Extreme and outrageous conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Buckley, 544 A.2d at 863 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "Generally, it is rare to find conduct in the employment context which will rise to the level of outrageousness necessary to provide a basis for recovery on a claim of intentional infliction of emotional distress."  Harris v. Middlesex County College, 353 N.J. Super. 31, 46 (App. Div. 2002) (citations and internal quotations omitted).

Anderson's burden of proof is great here, as "the limited scope of the tort tolerates many kinds of unjust, unfair and unkind conduct."  Fregara v. Jet Aviation Bus. Jets, 764 F. Supp. 940, 956 (D.N.J. 1991) (quoting Cautilli v. G.A.F. Corp., 531 F. Supp. 71, 74 (E.D. Pa. 1982) (applying New Jersey law)).

Anderson fails to carry her burden of showing that Defendants' conduct rises to the requisite level of "extreme and outrageous" behavior.  The facts, viewed in the light most

favorable to Plaintiff, show that Defendants attempted to contact Anderson by telephone only on three occasions after the onset of her health problems. (Pl. Rule 56.1 Stmt., ¶¶ 31, 33-35). Defendants actually spoke to Plaintiff twice. (Id., ¶¶ 33, 35.) The conversations centered around her health, her work project, and her expected return date. (Id., ¶¶ 34, 35, 38.) Later, Defendants also notified Anderson of her termination, via telephone and via correspondence. (Id., ¶¶ 42, 44.) Phone calls to sick employees, inquiring about work-related issues, while possibly annoying and unappreciated do not, however, constitute extreme and outrageous behavior.[10]

Further, no reasonable jury could find that Defendants' business decision to terminate Anderson and cease paying her benefits crosses "the threshold of decency into a realm of atrocity utterly intolerable in a civilized society." Borecki v. Eastern Int'l Mgmt. Corp., 694 F. Supp. 47, 61 (D.N.J. 1988) (internal citation omitted).

Defendants' motion for summary judgment as to Plaintiff's claim of intentional infliction of emotion distress is granted, as a matter of law. There are no genuine issues as to any material fact that precludes summary judgment.

---

[10] But cf. Porta v. Rollins Envtl. Servs., Inc., 654 F. Supp. 1275 (D.N.J. 1987) (finding that a material issue of fact existed where Plaintiff received sexually offensive and threatening mail at work, and was subject to demeaning comments and graffiti, prior to her termination)

## IV. CONCLUSION

For the reasons stated above, the motion of defendants, DSM Pharmaceuticals Inc., and DSM Pharmaceutical Products, Inc., for summary judgment, pursuant to FED. R. CIV. P. 56, is granted as to Counts I, II, III, V, and VI.  Defendants' motion for summary judgment, pursuant to FED. R. CIV. P. 56, is denied as to Count IV.


Date: December 11, 2008

                                       S/Joseph A. Greenaway, Jr.
                                      JOSEPH A. GREENAWAY, JR., U.S.D.J.